UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:15-cr-00124-KJM |
| Plaintiff, | |
| v. | ORDER |
| EPATI MALAUULU, | |
| Defendant. | |

Defendant Epati Malauulu moves for compassionate release, modifying his term of imprisonment to a term of home confinement, under 18 U.S.C. § 3582(c)(1)(A). Mot., ECF No. 249. Mr. Malauulu argues his health conditions put him at a higher risk of serious complications if he contracts COVID-19 and that this risk justifies his early release. The government does not dispute Mr. Malauulu's medical conditions place him at greater risk of contracting serious complications from COVID-19. The government argues the motion should be denied because Mr. Malauulu already contracted COVID-19 and did not suffer from serious complications, and he poses a danger to the community. For the following reasons, the court **denies this motion without prejudice.**

I.   BACKGROUND

Mr. Malauulu pled guilty to one count of conspiracy to distribute and possess with intent to distribute at least 500 grams of methamphetamine. Judgment at 1, ECF No. 137. In 2017, this

1

1  court sentenced him to a term of imprisonment of 240 months, with 60 months of supervised

2  release. *Id.* at 2-3. At the time of filing his motion, Mr. Malauulu has served slightly over

3  25 percent of his sentence, or approximately five years and four months. Mot. at 14; Gov't Opp'n

4  at 2, ECF No. 254. Mr. Malauulu is housed at Federal Correctional Institution Lompoc ("FCI

5  Lompoc").[1] Mot. at 6. The BOP currently reports no active cases of COVID-19, 3 deaths and

6  674 individuals recovered at FCI Lompoc.[2]

7        Medical records indicate Mr. Malauulu suffers from a number of health conditions,

8  including hypertension, type two diabetes, obesity and the effects of smoking. Mot. at 3; Medical

9  Records, Exhibit 2, Opp'n at 3.[3] The parties agree he was previously infected with COVID-19.

10 Bureau of Prisons (BOP) records demonstrate he contracted COVID-19 in May 2020 and suffered

11 with "cough, night sweats, diarrhea, blood streaked sputum, headaches, decreased appetite, and

12 chills." *Id.*, Ex. A at 19, ECF No. 248-1.[4]

13       Mr. Malauulu filed a request for compassionate release in June 2020 and there is no

14 evidence suggesting the warden has acted on the request. Mot. at 6; Exhibit B at 20, ECF

15 No. 249. If released, Mr. Malauulu states he will live in Vallejo, California and "will be under

16 the care of Roxanne Stevenson," without identifying Ms. Stevenson's relationship to him. Mot.

17 at 17; Ex. L ("Release Plan Questionnaire"). He asserts he will receive financial and moral

18 support from his family members. Release Plan Questionnaire at 91.

19 II.    <u>LEGAL STANDARD</u>

20       A sentencing court has authority to modify a term of imprisonment under 18 U.S.C.

21 § 3582(c)(1)(A). Under that statute, as amended by the First Step Act of 2018, Pub. L. No. 115-

22 391, 132 Stat. 5194 (Dec. 21, 2018), the court may grant a defendant's motion to reduce his term

---

[1] FCI Lompoc is a low security prison camp which is part of a larger complex with USP Lompoc, a medium security penitentiary. Bureau of Prisons, "FCI Lompoc," available at https://www.bop.gov/locations/institutions/lof/ (last visited Dec. 23, 2020).

[2] Bureau of Prisons, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/ (last visited Dec. 23, 2020).

[3] The government provided medical records, which have not yet been assigned page numbers by the court's ECF system. Therefore, the referenced page number here reflects a page number determined by a manual hand count.

[4] The court cites here to the page number assigned by court's ECF system.

of imprisonment, provided the defendant has first satisfied an exhaustion requirement, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if "extraordinary and compelling reasons warrant such a reduction," and if "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i).[5]

### III. DISCUSSION

#### A. Exhaustion

The government does not dispute that Mr. Malauulu has satisfied the exhaustion requirements of § 3582(c). Opp'n at 6. The court thus considers (A) whether Mr. Malauulu has demonstrated his motion is supported by extraordinary and compelling reasons and (B) whether applicable sentencing factors of § 3553(a) weigh in favor of his motion.

#### B. "Extraordinary and Compelling Reasons"

##### 1. Conditions at FCI Lompoc

The parties appear to agree regarding the severity of the coronavirus outbreak at FCI Lompoc. Opp'n at 5. As of this writing, as noted, FCI Lompoc has reported that three incarcerated individuals died from COVID-19 at the prison, and 674 incarcerated people have "recovered."[6] Numerous courts have recognized that the coronavirus outbreak at FCI Lompoc has been one of the worst outbreaks in the nation. *United States v. Robinson*, No. 18-CR-596, 2020 WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020); *United States v. Curtiss*, No. 18-CR06064, 2020 WL 3146506 (W.D. New York June 15, 2020); *United States v. Purry*, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); BOP, *COVID-19 Cases* (updated daily) (accessed October 2, 2020). This court has granted several motions for compassionate release for inmates housed at one or the other of the two facilities at Lompoc out of concern, at least in part, for the severity of the outbreaks. *See, e.g., United States v. Fernandez,* No. 2:16-CR-00115-KJM, 2020 WL

---

[5] This court previously has found U.S.S.G. § 1B1.13(1)(C)(i) is not binding after the passage of the First Step Act, but considers it guidance in deciding COVID-19 compassionate release cases. *See United States v. Bradley*, No. 2:14-cr-00293-KJM, 2020 WL 3802794, at *2–3 (E.D. Cal. July 7, 2020).

[6] Bureau of Prisons, "COVID-19 Cases," *available at* https://www.bop.gov/coronavirus/ (last visited Dec. 23, 2020).

5909490, at *6 (E.D. Cal. Oct. 6, 2020) (finding defendant's living conditions at FCI Lompoc and defendant's comorbidities, including hypertension and obesity, sufficient to grant compassionate release.).

### 2. Mr. Malauulu's Medical Conditions

As noted, Mr. Malauulu suffers from hypertension, obesity, type 2 diabetes and has a history of smoking. Medical Records at 3. The Centers for Disease Control[7] and courts relying on public health data have recognized these comorbidities place an individual at a higher risk of COVID-19 complications. *See, e.g., Terraciano,* 2020 WL 5878284, at *4 (collecting cases recognizing hypertension, obesity, and history of smoking as comorbidities sufficient to support compassionate release).

Mr. Malauulu's BMI increases his risk in the face of a COVID-19 infection. According to his Bureau of Prison Health records, his body mass index is consistently over 48, which places him within a group the CDC has found to be at higher risk of severe illness from COVID-19.[8] *See* Medical Records at 3, 7, 73, 104, 141, 146. The CDC specifically recognizes that having a body mass index over 40 increases one's risk of severe illness from COVID-19. In addition to the CDC, courts recognize that obesity places a defendant at a higher risk of COVID-19 complications. *See, e.g., Richardson*, 2020 U.S. Dist. LEXIS 108043, at *8; *United States v. Levario*, No. 12-00399, 2020 U.S. Dist. LEXIS 105211, at *9 (E.D. Cal. June 15, 2020). This court has granted motions for compassionate release for defendants with a BMI over 40 recognizing the high risk of this comorbidity, when all other factors also weighed in favor of release. *See, e.g., United States v. Tamasoa,* No. 2:15-cr-0124-KJM, 2020 U.S. Dist. LEXIS 212848, at *6 (E.D. Cal. Nov. 13, 2020).

/////

---

[7] *See* U.S. Centers for Disease Control, "People with Certain Medical Conditions," (updated Dec. 1, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (recognizing "severe obesity," "obesity," "type 2 diabetes" and "smoking" as conditions that increase risk for severe illness from COVID-19.

[8] *Id.* ("having obesity, defined as a body mass index (BMI) between 30 kg/m2 and <40 kg/m2 or severe obesity (BMI of 40 kg/m2 or above), increases your risk of severe illness from COVID-19.")

4

A review of the medical conditions from which Mr. Malauulu suffers, with citation to authorities supporting the conclusion the condition places him at a significant risk of COVID-19 complications, is as follows:

- Hypertension, *see, e.g.*, *United States v. Richardson*, No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("Defendant's hypertension alone places him at significant risk of complications."); *United States v. Sanders*, No. 19-20288, 2020 U.S. Dist. LEXIS 67595, at *10 (E.D. Mich. Apr. 17, 2020) ("Several courts . . . have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic.").
- Type 2 diabetes, *see United States v. Montgomery,* No. 2:96-CR-02042-LRS-1, 2020 U.S. Dist. LEXIS 153343, at *8 (E.D. Wash. Aug. 24, 2020) ("[N]umerous courts have recognized that the risk of significant complications from diabetes and exposure to COVID-19 can be a basis for compassionate release.").
- History of smoking, *see, e.g., United States v. Galaz*, No. 15-02559, 2020 WL 4569125, at *4 (S.D. Cal. Aug. 7, 2020) (collecting authority and research about risks of severe COVID-19 among those with history of smoking).

In sum, Mr. Malauulu suffers from numerous co-morbidities that place him at a higher risk of experiencing severe symptoms from COVID-19 in the first instance, without accounting for his already having had contracted the virus.

### 3. Risk of Reinfection

The government does not challenge the BOP records indicating Mr. Malauulu suffers from comorbidities that create increased health risks upon exposure to COVID-19. Opp'n at 9. The government argues, instead, that while Mr. Malauulu may have those comorbidities (1) re-infection is "exceedingly rare," and (2) while he was infected at FCI Lompoc, Malauulu was appropriately monitored and cared for. *Id.* at 10.

Courts are currently divided regarding the risk of reinfection and what any such risk means for a defendant such as Mr. Malauulu. Some courts have found a previous infection cuts against compassionate release. *See, e.g., United States v. Molley*, No. CR15-0254-JCC, 2020 WL

5

3498482, at *2 (W.D. Wash. June 29, 2020) ("releasing uninfected inmates mitigates the concrete risk of them getting infected, releasing [defendant] would reduce the risk of him getting reinfected. That risk is . . . speculative."). Other courts, including this one, have opted to "err on the side of caution to avoid potentially lethal consequences for [defendant]" because "simply announcing that an inmate has 'recovered' does not mean [defendant] is completely safe from the virus." *United States v. Keys*, No. 2:16-CR-00234-KJM, 2020 U.S. Dist. LEXIS 212867, at *9 (E.D. Cal. Nov. 12, 2020) (despite defendant "having had COVID-19, defendant is not foreclosed from showing 'extraordinary and compelling reasons' supporting his release); *see also United States v. Armstrong*, No. 18-CR-5108-BAS-1, 2020 WL 4366015, at *3 (S.D. Cal. July 30, 2020) (internal quotations and citation omitted) (finding "particularly persuasive that an inmate, being housed at the same facility as [defendant], was hospitalized and died after he was pronounced 'recovered' by the BOP."); *United States v. Yellin*, No. 3:15-CR-3181-BTM-1, 2020 WL 3488738, at *2 (S.D. Cal. June 26, 2020) (granting compassionate release of inmate with underlying medical conditions who had been infected with COVID-19, but did not develop severe symptoms, because, among other things, inmates were not tested for COVID-19 unless they displayed symptoms and risk reinfection would have on inmate's health).

Considering the high level of infection at FCI Lompoc, the lack of scientific certainty regarding whether reinfection is possible after a purported recovery or negative test, or whether COVID-19 immunity lasts, coupled with Mr. Malauulu's prior infection and his multiple health conditions, this court errs on the side of caution and finds defendant's specific risk of reinfection appears to be heightened at FCI Lompoc. *See Yellin,* 2020 WL 3488738, at *2. Therefore, if Mr. Malauulu chooses to move for compassionate release after briefing a more viable release plan, as discussed below, he does not need to re-brief his medical conditions.

  C. <u>Sentencing Factors & Release Plan</u>

The Sentencing Guidelines instruct "the court [to] consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and the [c]ourt should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez,* 451 F. Supp. 3d 1197 (E.D. Wash.

2020) (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A).  The court thus considers whether Mr. Malauulu is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," accepting this Guidelines statement as guidance.  U.S.S.G. § 1B1.13.

Mr. Malauulu committed a serious offense, which warrants careful consideration in assessing his potential for danger to the community.  *See, e.g.*, 18 U.S.C. § 3553(a) (requiring sentencing court to consider, among other factors, "the nature and circumstances of the offense"; "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; and for the sentence "to afford adequate deterrence to criminal conduct").  According to the factual basis for his plea agreement, Mr. Malauulu operated a methamphetamine distribution business, purchasing methamphetamine in California and selling it for a profit in Hawaii.  ECF No. 107 at 12.  Over approximately two years, Mr. Malauulu oversaw and assisted in the sending of more than ten pounds of methamphetamine to Hawaii.  *Id.* at 12-13.

The parties contest whether Mr. Malauulu qualifies for release under the sentencing factors.  Reply at 6-7, ECF No. 257; Opp'n at 11-12.  The government argues he enlisted others in his drug conspiracy, and his behavior is even more egregious as it occurred after receiving "multi year sentences in the state criminal system" for similar conduct, making him a recidivist.  Opp'n at 13.  Mr. Malauulu explains that while he does have a prior criminal history many courts granted him probation, Reply at 7, implying in part the prior light sentences may have reflected Mr. Malauulu's mitigating family history; for example, he explains he only turned to drugs to try to support his family after his father abandoned his mother.  *Id.*  Mr. Malauulu also argues he has bettered himself substantially while in prison, taking several educational courses including Beginning Meditation, Commitment to Change, Basic Computer, Parenting in Main Education, Personal Development; he also has participated in drug education.  *Id.* at 16.

While Mr. Malauulu's record does suggest some level of dangerousness to the community if he is released, the court observes that his dangerousness might be overcome by a comprehensive, viable release plan.  *Cf. United States v. Tamasoa*, No. 2:15-CR-0124-KJM, 2020

7

WL 6700415, at *5 (E.D. Cal. Nov. 13, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 985 (C.D. Cal. 2020); *United States v. Kauwe,* 467 F. Supp. 3d 940 (D. Nev. 2020), *appeal filed,* No. 20-10230 (July 17, 2020). Here, Mr. Malauulu has not provided a viable release plan. He proposes to live with a Roxanne Stevenson, but offers no details regarding who Ms. Stevenson is, her relationship to him, or her residence apart from its location in Vallejo. Release Plan Questionnaire at 91. He does not provide meaningful details regarding how he will financially support himself, how he will be cared for if he does get sick, or how he will receive assistance from his family. *Id.* While he asserts he has the vocational skill of Polynesian cooking, his response to whether he has a job offer or prospects is "N/A." *Id.* To consider granting release, the court would need to see a more well developed plan to fill in the gaps and demonstrate how defendant proposed to occupy his time, support himself, and avoid future criminality, given his recidivist criminal history.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the court DENIES defendant's motion for release without prejudice under 18 U.S.C. § 3582.

The court GRANTS government's request to seal defendant's medical records.

This order resolves ECF Nos. 249 and 255.

IT IS SO ORDERED.

DATED: December 23, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE